Filed 7/27/26  N.E. v. City of Petaluma CA1/4

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

|  |  |
|---|---|
| N.E., a Minor, etc.,<br><br>　　　Plaintiff and Appellant,<br><br>　　　　　　v.<br><br>CITY OF PETALUMA et al.,<br><br>　　　Defendants and Respondents. | A172167<br><br>(Sonoma County<br>Super. Ct. No. SCV273886) |

Plaintiff N.E., a minor, by and through her guardian ad litem Rebecca Pederson, filed this wrongful death suit against the City of Petaluma (City) and the Sonoma-Marin Area Rail Transit (SMART), after her father was killed in a motorcycle accident near a SMART train crossing in Petaluma, California.  In her operative second amended complaint, N.E. alleges the same claim against both defendants for maintaining a dangerous condition of public property.  She alleges the road conditions made it difficult for drivers to detect the median because it had an unmarked and unlit 8-inch median, as well as elevation variances and a curvature in the road.

Sustaining demurrers filed by the City and by SMART, the court found that N.E.'s allegations were too general.  The court found that she failed to specify the precise defects in the road, the manner in which the alleged defects created a safety hazard, and whether these conditions posed

1

a substantial risk to drivers exercising due care.  It also noted that N.E. failed to plead facts sufficient to establish a "hidden trap" or "peculiar condition" that would render defendants liable for a failure to add warning markings or light the roadway, per Government Code sections 830.4 and 830.8.  Because N.E. had tried and failed to amend her complaint on two previous occasions, the court sustained the demurrers with prejudice.

On appeal, N.E. argues that the trial court erred.  She contends she has pled enough specifics to support a viable claim based on the road median and curvature to establish a dangerous condition of public property, as well as a "hidden trap" and "peculiar condition" that would impose a duty on the defendants to provide markings and lighting under Government Code sections 830.4 and 830.8.  She argues in the alternative that she should be given another opportunity to amend her complaint, and claims there are more specifics she can add.  Respondents, for their part, restate the court's reasoning and urge unconditional affirmance.

We agree that the demurrers were properly sustained, but will remand so that N.E. may seek to cure the defects in her complaint.  Given the heightened pleading standard for claims alleged under the Government Claims Act (Gov. Code, § 810 et seq.) (previously known as the Tort Claims Act), N.E. failed to plead enough specifics for viable claims of a dangerous condition of public property (Gov. Code, § 835) or a "hidden trap" and "peculiar condition" that would defeat defendants' immunity.  But we disagree that the demurrer was properly sustained without leave to amend. There is no categorical rule restricting the number of times a plaintiff may amend a complaint.  Since N.E. plausibly argues she can add further details that may save her complaint, she should be given another chance to replead.

Accordingly, while we will affirm the order sustaining the demurrers, we will remand with directions that the trial court grant N.E. a third opportunity to amend her complaint.

## I. BACKGROUND

In June 2022, N.E.'s father was riding a motorcycle in Petaluma, California when he struck a concrete roadway median in the vicinity of a train crossing controlled by SMART. He sustained fatal injuries. Following the crash, N.E. brought a wrongful death suit against two public entities, the City and SMART, alleging maintenance of a dangerous condition of public property.

Each defendant demurred three times, arguing that the complaint as originally filled and as amended twice was legally insufficient. Sustaining these demurrers, the trial court concluded that N.E. failed to explain the specific defects in the roadway complained of and how such defects were hazardous. But twice it granted N.E. an opportunity to amend her complaint. After granting leave to amend a second time, the court noted that "since a demurrer ha[d] already been sustained to this cause of action in the past and [the] Plaintiff ha[d] never explained to the Court how the defects could be cured by amendment, this is the final time [it would] grant leave to amend."

### A. *Allegations of the Second Amended Complaint*

In her second amended complaint, N.E. largely restated allegations from her prior complaints. She pleaded a dangerous condition of public property, alleging the roadway had a "dangerous" curvature, a "dangerous" and "unmarked" median and concrete barrier, and "inadequate" warnings, lighting, markings, and signage. As in her first amended complaint, she restated that the "physical characteristics" of the roadway "created vision

3

limitations, obscure elevation variances, and otherwise constituted hidden traps . . . ."

But some allegations were new. She alleged that the "8-inch" median was "dangerous and physically defective in design, placement, and due to its physically deteriorated condition." For support, she stated the median was struck by other vehicles, "as evidenced by numerous wheel strike marks and damage." She then stated the median was dangerous, because there was an "absence of lighting in the area" and a lack of reflective markings and signage to warn motorists of the median. She alleged that the median was built and designed with warnings, but the warnings were broken and/or removed prior to the accident.

## B. *Trial Court's Rulings*

In the order sustaining the third round of demurrers—the order now under review—the trial court began by explaining that " '[t]he limited and statutory nature of government liability mandates that claims against public entities be specifically pleaded.' (*Brenner v. City of El Cajon* (2003) 113 Cal.App.4th 434, 439 [(*Brenner*)].)" (See Gov. Code, §§ 815, 835.) Applying this heightened pleading standard, the court found many of N.E.'s allegations to be too "general," "unsupported by facts," and "conclusory." For instance, the court held that N.E.'s allegations of a "dangerous curvature," a "dangerous median," "vision limitations, obscure elevation variances, and . . . hidden traps" were all too "generally pleaded" and that N.E. failed to explain the manner in which those alleged defects created an undue safety hazard.

Specifically, with respect to the center median, the court explained that the alleged wheel strike marks on the median and the missing reflective markings were not sufficient to support a viable claim for a dangerous condition of public property or that they established a "hidden

4

trap" or "peculiar condition" that would obligate both defendants to provide warning marks or lighting. Wheel strike marks alone, without any indication the median was "physically deteriorated" or improperly located or designed, do not establish that the median was in a dangerous condition, the court stated.

As for the alleged lack of lighting and warning markers, the court noted that public entities have no duty to light their streets and are immune from claims alleging failure to provide warning signals and markings under Government Code sections 830.4 and 830.8. None of N.E.'s factual allegations, the court concluded, amounted to a "peculiar condition" or "hidden trap" that would defeat this immunity.

Summing up, the court announced it would once again sustain the defendants' demurrers, but this time without leave to amend. It noted that since N.E. had already received two opportunities to amend her complaint to state a legally viable cause of action and each time had failed to explain how the alleged negligence cause of action could be revised to cure identified defects, leave to amend would be denied.

This timely appeal from the ensuing judgment followed.

## II. DISCUSSION

### A. *Legal Standards*

On appeal, we review de novo the trial court's decision to sustain both defendants' demurrers to N.E.'s complaint. (*Sproul v. Vallee* (2025) 116 Cal.App.5th 285, 293.) A complaint passes muster when it sets forth facts sufficient to state a cause of action under any legal theory. (*Id.* at p. 292.) We interpret a complaint reasonably, reading its parts in context and as a whole. (*Zelig v. County of Los Angeles* (2002) 27 Cal.4th 1112, 1126.) While properly pleaded material facts are assumed to be true, contentions, deductions, or conclusions of fact or law are not. (*Ibid.*)

5

Under the Government Claims Act, public entities are not liable for injury except as provided by statute. (Gov. Code, § 815; see *Williams v. Horvath* (1976) 16 Cal.3d 834, 838 [noting the Government Claims Act confines liability for public entities to "rigidly delineated circumstances"].) For claims alleging maintenance of a dangerous condition of public property, Government Code section 835 provides the sole statutory avenue for imposing liability on public entities. (*Zelig v. County of Los Angeles*, *supra*, 27 Cal.4th at p. 1133.)

Under Government Code section 835, a plaintiff must plead four elements to state a cause of action: (1) the property was in a dangerous condition; (2) the injuries were proximately caused by the dangerous condition; (3) the dangerous condition created a reasonably foreseeable risk, even with the exercise of due care; and (4) the government entity had actual or constructive notice sufficient to have taken measures to protect against the dangerous condition. Crucially, the occurrence of an accident resulting in injury is not, in and of itself, evidence that a piece of public property was in a dangerous condition. (Gov. Code, § 830.5, subd (a).)

Here, only the first element, the existence of a dangerous condition, is contested. A condition of public property is dangerous when it creates "a substantial (as distinguished from a minor, trivial, or insignificant) risk of injury when such property . . . is used with due care in a manner in which it is reasonably foreseeable that it will be used." (Gov. Code, § 830, subd. (a); *Brenner*, *supra*, 113 Cal.App.4th at p. 439.)

Given the limited and statutory nature of government liability, a plaintiff must plead a dangerous condition with specificity. (*Susman v. City of Los Angeles* (1969) 269 Cal.App.2d 803, 809.) In other words, their pleadings must include factual allegations identifying the particular

6

manner in which the property was defective or dangerous. (*Brenner*, *supra*, 113 Cal.App.4th at p. 439.) Pleadings cannot rely on conclusory or generalized allegations that a dangerous condition existed. (*Ibid*.)

While the existence of a dangerous condition is ordinarily a question of fact, it can be decided as a matter of law if reasonable minds can arrive at only one conclusion. (*Bonanno v. Central Contra Costa Transit Authority* (2003) 30 Cal.4th 139, 148 (*Bonanno*).) Accordingly, if the facts pleaded by the plaintiff cannot support the finding of the existence of a dangerous condition, a court may sustain a demurrer to a complaint. (*Brenner*, *supra*, 113 Cal.App.4th at p. 440.)

## B. *The Second Amended Complaint Does Not Allege Facts Sufficient To Establish a Dangerous Condition of Public Property*

N.E. argues that her second amended complaint pleads sufficient factual allegations to establish a dangerous condition of public property. She highlights the following allegations that she contends meet the requisite specificity standard: (1) a dangerous curvature and elevation variances that made it difficult for motorists to detect the presence of a median, (2) the presence of a low-level center median, and (3) the median's lack of markings and lighting.

The defendants argue that these allegations are still too general and lack factual particulars showing dangerousness. They argue that under the heightened pleadings standard, N.E. has now repeatedly failed to meet her burden of specifying the manner in which the road conditions are hazardous and should not be given another opportunity to amend.

As explained below in further detail, we agree with the defendants that N.E.'s allegations concerning the road's curvature, median, and lack of warnings and lighting remain insufficient to support a dangerous condition

7

claim, but we agree with N.E. that she is entitled to another chance to amend her complaint.

### 1. Dangerous Curve

First, N.E. alleges that the "physical characteristics of the aforesaid roadway created vision limitations, obscure elevation variances, and otherwise constituted hidden traps that [were] not reasonably apparent to motorists." But curves and elevation variances are not per se dangerous. (See *Mittenhuber v. City of Redondo Beach* (1983) 142 Cal.App.3d 1, 7 [concluding that it would be unduly burdensome to hold municipalities strictly "liable for the natural topography of the land"]; see also *Mixon v. Pacific Gas & Electric Co.* (2012) 207 Cal.App.4th 124, 137 [finding that not all " ' "dip[s] or hollow[s]" ' " obscure visibility and create hazards that violate state standards] (*Mixon*).)

Since these conditions do not establish danger as a matter of law, the defendants correctly argue that N.E. must allege specific, factual details describing the manner in which the road conditions are hazardous. (*Brenner*, *supra*, 113 Cal.App.4th at p. 439; *People ex rel. Department of Transportation v. Superior Court* (1992) 5 Cal.App.4th 1480, 1486 (*Verdeja*).) The defendants cite *Verdeja*, which affirms this rule.

In *Verdeja*, the plaintiffs alleged that a dirt median constituted a dangerous condition of public property. (*Verdeja*, *supra*, 5 Cal.App.4th at p. 1483.) In their complaint, they alleged that the dirt median was dangerous because a vehicle "crossed over the dirt center divider and struck [their] vehicle head-on." (*Ibid*.) The plaintiffs argued that this allegation alone showed that the dirt median proximately caused their injury and was dangerous; however, the court disagreed, finding their complaint insufficient to state a cause of action. (*Id*. at pp. 1485–1486.) The court

reasoned that the plaintiffs' allegation lacked specificity, such that it was unclear whether the dirt median and not other factors, like a wet or slick road, caused the plaintiffs' injury. (*Ibid.*) The plaintiffs therefore had an obligation to provide the defendants more information, specifically the "manner" in which the dirt median was hazardous and "the nature of the relationship between the condition of the median and the injuries suffered by real parties." (*Id.* at p. 1486.) The court explained that these details were required so that the defendant could fully grasp the plaintiffs' theory of relief and marshal an appropriate defense. (*Ibid.*)

Like the plaintiffs' allegations in *Verdeja*, here, N.E.'s allegations are vague and lack the factual detail necessary to plead a cause of action. She asserts the elevation variances were "obscure" and that there were "vision limitations" but never explains the "manner" in which the road's curvature or elevation variances impaired visibility. Moreover, just as the court in *Verdeja* found multiple plausible explanations for the plaintiffs' accident unrelated to the median, N.E.'s allegations leave open other plausible explanations for her father's injury: he was driving at night, his tires may have been worn, or he may have been driving too fast for conditions. N.E.'s second amended complaint leaves open these possibilities, and more. Without greater specificity, there is no way to connect the road's curvature or elevation variances to the cause of the crash, which deprives defendants of enough notice of the claim against them to mount a defense. (*Verdeja, supra*, 5 Cal.App.4th at pp. 1485–1486.)

N.E.'s allegations also fail to establish that the road conditions posed a "substantial risk" of injury to motorists exercising "due care." (Gov. Code, § 830, subd. (a).) The defendants cite two cases, *Brenner, supra*, 113 Cal.App.4th 434 and *Cerna v. City of Oakland* (2008) 161 Cal.App.4th 1340

9

(*Cerna*), to illustrate the requirement they rely upon here. In *Brenner*, the plaintiff alleged heavy pedestrian and vehicular traffic near a multi-lane road to argue that a road was in a dangerous condition. (*Brenner*, at p. 440.) Nonetheless, the court found her allegations insufficient because those conditions were common and could not independently establish a "substantial" risk to drivers exercising due care. (*Ibid.*) Similarly, in *Cerna*, the court held that a crosswalk painted white instead of yellow did not constitute a dangerous condition. Since drivers must yield to pedestrians regardless of marking color, no substantial risk was shown to drivers exercising due care. (*Cerna*, at p. 1351.)

Like the plaintiffs in *Brenner* and *Cerna*, N.E. fails to plead specific, factual material that establishes how the road conditions create a substantial risk of injury for a driver exercising due care. As *Brenner* and *Cerna* illustrate, alleging common road conditions that could make a road less safe, such as heavy traffic or less visible lane markings, is not enough. The key question is whether such conditions create a "substantial" risk that even a driver exercising due care could not reasonably avoid injury. Thus, even if we take N.E.'s allegations of vision limitations and obscure elevation variances as true, both features at best establish an elevated risk of harm, not one that is unusual or "substantial" as to injure a driver exercising due care.

N.E. contends that *Verdeja*, *Brenner*, and *Cerna* are not applicable here because they do not "involve a low-lying center median." We disagree. All three cases outline a well-established construction of Government Code section 830 and define what is necessary to plead a dangerous condition of public property. (*Verdeja, supra*, 5 Cal.App.4th at pp. 1483–1486; *Brenner, supra*, 113 Cal.App.4th at pp. 439–440; *Cerna, supra*, 161 Cal.App.4th at

10

pp. 1346–1348.) That standard applies regardless of the road features at issue.

N.E. also argues that *Salas v. Department of Transportation* (2011) 198 Cal.App.4th 1058 and *Bonanno*, *supra*, 30 Cal.4th 139, support her position because they articulate "broad standards" for pleadings. But *Salas* applies the standard put forth in *Brenner* and *Cerna* that a plaintiff must show a condition of property poses a substantial risk of injury even when used with due care, and comes to a different conclusion on the facts presented there. (*Salas*, at p. 1071 [finding that a crosswalk, which lacked traffic controls, was not in a dangerous condition, because it was not shown that the crosswalk created a substantial risk of injury when used with due care].)

And *Bonanno* is simply off-point. There, our Supreme Court resolved a separate question: whether the location of a public property could be deemed dangerous because users had to cross a separately dangerous crosswalk to reach it and not whether a physical condition of property independently constitutes a dangerous condition. (*Bonanno*, *supra*, 30 Cal.4th at pp. 146–147.) Thus, affirming the rules laid out in *Verdeja*, *Brenner*, and *Cerna*, we find that N.E. did not plead enough factual material to allege a dangerous condition of public property based on the road's curvature and variances alone.

### 2. Dangerous Median

N.E. alleges that the median "was dangerous and physically defective in design, placement, and due to its physically deteriorated condition." She furthers that the median had been struck by "numerous vehicles previously as evidenced by numerous wheel strike marks and damage." Again, these

11

allegations are insufficient for the same reasons as her curvature allegations.

First, hard, fixed objects on a roadway, such as medians, do not establish a dangerous condition as a matter of law. (*Cordova v. City of Los Angeles* (2015) 61 Cal.4th 1099, 1111.) Second, N.E's allegations are too general. As discussed above, N.E. bears the burden of pleading her claim with specificity, and she must allege facts showing the manner in which the condition was defective or dangerous and how that condition proximately caused the injuries sustained. (*Verdeja, supra*, 5 Cal.App.4th at pp. 1483–1486.) Here, N.E. states only that this particular median was "physically defective" or "deteriorated" without identifying any specific qualities of the median that could endanger drivers.

While N.E. does allege there were "wheel strike marks" and "damage," neither is pleaded with particularity. A median may bear such marks and such damage while remaining functional; moreover, those marks may reflect the conduct of reckless drivers rather than any defect in the median's design or placement. Absent more particular facts, these allegations do not permit the inference that the median, rather than other factors, proximately caused N.E.'s father's injury, as was the case with the insufficient allegations in *Verdeja*. (*Verdeja, supra*, 5 Cal.App.4th at pp. 1483–1486 [finding that the plaintiffs' allegations were too broad, permitting inferences that other factors and not the dangerous condition alleged proximately caused the plaintiffs' injury].)

Finally, N.E. pleads no facts establishing that the median posed a substantial risk of injury to motorists exercising due care. In *Brenner*, the court held that high pedestrian and vehicular traffic, as common conditions, could not independently support a dangerous condition claim. (*Brenner*,

*supra*, 113 Cal.App.4th at p. 440.)  Medians are equally common road features.  N.E. therefore must allege additional facts demonstrating that this particular median was uniquely situated as to pose a substantial, as opposed to a slight or trivial, danger to drivers exercising due care.  (*Ibid.*)

### 3.  Failure to Warn of the Median

Third, N.E. alleges the roadway was in a dangerous condition because the median lacked warnings in the form of reflective markers and signage. She alleges that, while the median was built and designed with markings, they were broken and removed prior to the accident and never restored. This allegation also fails as a matter of law.

As the City correctly points out, Government Code sections 830.4 and 830.8 grant public entities immunity for a failure to provide traffic control signals (Gov. Code, § 830.4) and a failure to provide warnings signs, markings, and devices (Gov. Code, § 830.8).  Rejecting a claim against a city for failure to provide "traffic signals, stop signs, semaphores, or other traffic control devices" (*Perry v. City of Santa Monica* (1955) 130 Cal.App.2d 370, 371), an appellate panel observed long ago that that public entities are not insurers of traveler safety.  (*Id.* at p. 372.)  They are not required to implement every conceivable precaution, only those necessary to keep streets in a reasonably safe condition.  (*Ibid.*)

That immunity is not absolute, however.  A duty to provide warnings will arise when underlying road conditions constitute a hidden trap, "a dangerous condition which endanger[s] the safe movement of traffic and which would not be reasonably apparent to, and would not have been anticipated by, a person exercising due care."  (Gov. Code, § 830.8; *Washington v. City and County of San Francisco* (1990) 219 Cal.App.3d 1531, 1535–1537.)  The trap must exist independent of an absence of

13

warning signs and must be grounded in other road conditions. (*Mixon*, *supra*, 207 Cal.App.4th at p. 135.)

N.E. argues that her allegations of an 8-inch center median, elevation variances, and wheel strike marks sufficiently establish a hidden trap, but that is not so. *Washington*, which N.E. relies on for support, illustrates why. There, the court found a hidden trap where specific physical factors—metal pillars and shadows cast by an overhead freeway—created vision limitations for all drivers, even those exercising due care. (*Washington v. City and County of San Francisco, supra*, 219 Cal.App.3d at p. 1535.) Unlike the allegations in *Washington*, however, N.E.'s alleged defects are neither specifically pleaded nor logically correlated with vision limitations. Indeed, medians are objectively visible road features. Her allegations of elevation variances are vague, and the wheel strike marks show only that other drivers have contacted the median, not that the hazard was hidden. In fact, drivers may strike medians for any number of reasons unrelated to visibility. Without more, N.E. has not established a hidden trap where a driver exercising due care would have difficulty avoiding the median.

Further, N.E.'s allegation that the median's original markings were broken and never restored does not impose a heightened or special duty on public entities to restore such markings. In *Cerna*, the court held that section 830.4 preserved immunity for public entities, even when they failed to fix missing or mispositioned warning signs. (*Cerna, supra*, 161 Cal.App.4th at pp. 1348, 1351–1352.) The court explained that the absence of warnings "is not a physical characteristic" of a roadway and "not actionable as a dangerous condition." (*Id.* at p. 1352.) For our case here, the fact that the median once had markings does not impose on defendants a duty to restore them. Thus, because N.E. has not identified physical

14

features of the roadway that would independently create a hidden trap, her allegations do not pierce the immunity defendants have under Government Code sections 830.4 and 830.8.

### 4. Failure to Light the Median

Finally, N.E. alleges a failure to provide street lighting, claiming that inadequate illumination of the median contributed to reduced visibility. This allegation likewise fails.

As both defendants note, a public entity has no duty to light its streets absent a " 'peculiar condition' " rendering lighting necessary for safe travel. (*Mixon*, *supra*, 207 Cal.App.4th at p. 133.)  Absent a statutory provision establishing such a duty, a public entity's failure to light its streets "is not actionable negligence and will not render it liable in damages to a traveler who is injured solely by reason thereof."  (40 Am.Jur.2d (2026) Highways, Streets, and Bridges, § 342; *Mixon*, *supra*, 207 Cal.App.4th at p. 133.)

N.E. claims that the presence of a low-lying 8-inch median is itself a " 'peculiar condition' " and cites *Mixon* for support.  But *Mixon* only confirms that her allegations fall short.  There, the plaintiff presented evidence that an intersection had visibility challenges, showing how its lighting, relative to surrounding well-lit areas, produced a " 'black hole' " effect that would make it difficult to perceive pedestrians.  (*Mixon, supra*, 207 Cal.App.4th at p. 134.)  Despite this evidence, the court found no peculiar condition, noting that the gradations in lighting intensity here were not "unlike many urban areas." (*Ibid.*)

Here, N.E.'s allegations are much sparser than the allegations in *Mixon*.  She points only to the existence of a median and wheel strike marks, neither of which naturally speak to a lack of visibility in the roadway.  Just as the court in *Mixon* found the lighting configuration in the

intersection unremarkable, here, the dangerous condition in question—a median—is a common roadway feature, and N.E. pleaded no facts showing that the median here is unusually difficult to perceive or requires additional lighting for safe travel. If the plaintiffs in *Mixon* were unable to establish a " 'peculiar condition' " necessitating lighting for a " 'black hole' " intersection, N.E. certainly cannot do so by simply alleging the existence of a road median.

### C. *We Exercise Our Discretion on Appeal To Determine That N.E. Should Be Given a Further Opportunity To Amend Her Complaint Based on Representations She Has Made About Further Revisions That May Be Sufficient To Survive Demurrer*

The trial court denied N.E. a third opportunity to amend her complaint explaining that she had been given two prior opportunities to amend in response to the court's specific comments about the shortcomings in her complaint and first amended complaint. The opportunity to cure, however, is not governed by a " 'two strikes and you're out' " rule or any other arbitrary numerical limit. (*Morris v. JPMorgan Chase Bank, N.A.* (2022) 78 Cal.App.5th 279, 300.) A plaintiff's failure to remedy prior complaints does not preclude the possibility of cure on a subsequent attempt. (*Ibid.*) Rather, the relevant question is whether N.E. has shown how she would amend her complaint and that her proposed amendments could successfully state a cause of action.

We have discretion to permit such an amendment based on representations made for the first time on appeal. (*Mercury Ins. Co. v. Pearson* (2008) 169 Cal.App.4th 1064, 1072 ["While it is the plaintiff's burden to show 'that the trial court abused its discretion' and 'show in what manner he can amend his complaint and how that amendment will change the legal effect of his pleading' [citation], a plaintiff can make 'such a showing . . . for the first time to the reviewing court' [citation]."]; see Code

16

Civ. Proc., § 472c.) We choose to exercise that discretion here. N.E. represents that, if given the opportunity, she would add allegations "specifying how the absence of lighting visually impairs the ability to see the median; specificities on how the elevation variances in the roadway obscure the median; . . . how the lack of warnings [a]ffect driver's perception; and more detailed descriptions of [the] deterioration of said median."

As underscored earlier, the central deficiency in N.E.'s second amended complaint is that her allegations remain too general. She has not specified the physical characteristics of the roadway, the manner in which those characteristics posed a hazard, or how they created a substantial risk to drivers exercising due care. (*Brenner*, *supra*, 113 Cal.App.4th at pp. 439– 440.) N.E.'s proposed amendments *could* address these gaps. More detailed allegations of the elevation variances, the median's deterioration, and their effect on driver perception could better illustrate how the road's conditions were hazardous to even reasonably careful drivers.

It is certainly true, as the trial court correctly reminded N.E., that public entities cannot be held liable for maintaining a dangerous condition of public property based on allegations of a failure to provide street lighting; a failure to provide street signage or warning signs; or the existence of curves or elevation changes in a roadway. Absent unusual circumstances, each of these conditions poses a common hazard motorists can expect to encounter. But as we read the second amended complaint, N.E. appears to be attempting to pursue a theory that the various conditions in combination—none of which, alone, would be sufficient to support her negligence claim—exacerbated the risk presented by a "deteriorated[,]" low- lying (8" tall) median strip that is unusually difficult to see at night, even for a motorist or motorcyclist exercising due care.

17

Based on N.E.'s representation that she can plead such a theory with more particularity, we see a reasonable possibility that a third amended complaint may survive a demurrer. "That the location of a public improvement or, more broadly, *its relationship to its surroundings*, may create dangers to users is by no means a novel idea." (*Bonanno, supra,* 30 Cal.4th at p. 149, italics added.) And a variety of conditions, in combination, may be enough to create such a risk. (See *Constantinescu v. Conejo Valley Unified School Dist.* (1993) 16 Cal.App.4th 1466, 1476 [dangerous condition created by "amalgam of factors" including the use of low lying curb despite lack of any obligation on the part of the city to provide curbs high enough to prevent motorists from driving up onto sidewalk]; *Curreri v. City & County of San Francisco* (1968) 262 Cal.App.2d 603, 611 [same].)

Although we conclude that the trial court exceeded its discretion in sustaining the defendants' demurrers without leave to amend, we reach this conclusion somewhat reluctantly. Because we rely on representations made for the first time on appeal, our disposition on appeal should not be taken to reflect negatively on the careful consideration the trial court gave to this pleading matter as presented on the defendants' latest round of demurrers. We hold only that since, under the liberal standard that governs requests for pleading amendments, there appears to us to be a reasonable possibility that further amendments might state a legally viable "amalgam of factors" theory of liability, N.E. should be given another opportunity to replead. We are not suggesting that she need only parrot what we have said, *legally*, about common hazards arising in combination; more *factual* particulars are necessary, which may require more investigation or even the retention of an

18

expert. Depending on how N.E. responds, we too may be prepared to conclude that this further opportunity to amend should be her last.

## III. DISPOSITION

We affirm the trial court's ruling that the second amended complaint fails to state a cause of action, but reverse the denial of leave to amend and remand with directions to grant N.E. leave to file a third amended complaint. The parties shall bear their respective costs on appeal.

STREETER, Acting P. J.

WE CONCUR:

GOLDMAN, J.
SWEET, J.*

---

* Judge of the Marin Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

19